McCATHERN *v.* BELL.

1. Where negotiable securities were transferred in general terms, "for value received," the writing not expressing the purpose of the transfer, parol evidence is admissible to show that the purpose was to secure the payment of a particular debt, and that the parties agreed that the proceeds, when collected, should be applied to that debt, and not to debts generally at the election of the creditor.

2. The creditor's general manager was such an agent as would have power to stipulate for the application of the proceeds of particular collaterals received by him to the payment of a given debt, even though this might modify a previous executory contract made by his principal with the debtor.

3. A subsequent written agreement between debtor and creditor, touching further indebtedness and security therefor, in which it was provided that the creditor should have the right at his own election to place payments as credits on any demand he might have against the debtor at the time of the payment, would not abrogate the previous contract touching the collaterals and their proceeds, no express mention or reference thereto being made in the subsequent agreement. *Judgment affirmed.*

November 27, 1893.

Trover. Before Judge RONEY. Burke superior court. December term, 1892.

McCathern brought an action against J. W. Bell for the recovery of two mules. The plaintiff introduced a note given to him by the defendant for the two mules, dated May 16, 1890, payable on or before the first of the next November, with a reservation of title to the mules until the purchase price should be paid in full. The testimony for the plaintiff is, that there were certain credits on the note, and after calculating principal and interest, the balance due on November 9, 1891, was $94.41, and that nothing has been paid on the note since then. The defendant introduced two rent notes dated January 31, 1891, and payable to the defendant as landlord, one for $40 and the other for $120. Each of them bears a written transfer of the same date, from the defendant to the plaintiff, together with all his rights

thereunder as landlord. The testimony of the defendant and of his brother, Simeon Bell, who was manager for the plaintiff in January, 1891, shows that on the day the notes were transferred the plaintiff told his brother he was going to the bank and get the notes discounted and pay up the balance then due on the mule note. Simeon Bell told him not to do that but to transfer the notes to the plaintiff, and when collected the money arising from them would be first appropriated to the payment of the mule note, and the balance to the defendant's open account with the plaintiff. This testimony was admitted over objection that the transfer of the notes was in writing and could not be added to by parol. Simeon Bell further testified: My purpose in taking transfer of rent notes in that way was to get the overplus as security for his account. If he had gone off and traded them, he could have paid up the balance on the mule note and kept the balance of the money. I wanted to get what security I could. I did not take any mortgage or other security on the mules; did not ask for any.

The plaintiff introduced a mortgage to himself from the defendant, dated June 3, 1891, to secure a note for $1,000, due on the 15th of the next September, covering the defendant's crop for that year, the note being for advances already made and to be made. The mortgage contained a stipulation, that the plaintiff should have the right to place payments as credits on any demand he might have against the defendant at the time of the payment. Reynolds, who became book-keeper for the plaintiff in the latter part of 1891, testified that the defendant came to him and directed him to apply the collections on the transferred rent notes to the payment of the mule note; that he positively declined to do so, for the reason that the plaintiff claimed the right to appropriate credits; and that on the same day the de-

fendant sent to the plaintiff a note directing him to apply a sufficient amount of the proceeds of the two rent notes to pay up the mule note, and to place the balance to the credit of the defendant's open account. Reynolds further testified that when the rent notes were collected, he placed the proceeds to the credit of the open account, which was thus settled in full. The defendant testified that when he directed Reynolds as above stated, Reynolds agreed to apply the collections from the rent notes to the payment of the mule note. The plaintiff testified: I had been advancing defendant for years, and he got further and further behind. In January, 1890, I determined not to advance him further, and had him to turn over to me certain mules on which I then held a mortgage. He went to see another firm and tried to get them to run him, then came back, and I finally agreed to run him for that year. In January, 1891, I told him I could not advance him any longer. He begged me do so; said he would transfer me all the notes and give me a mortgage on his crops to secure his indebtedness, and try to pay me. Then I agreed to run him for 1891. He had transferred me the rent notes for previous years. I did not authorize Simeon Bell to receive the rent notes in 1891 in the way he claims to have done so, and never before heard that they had been so taken. He was managing my business for me and took all papers and securities for me. —Defendant testified: " I had been running with Mr. McCathern for several years. He sold me the mules sued for. I did not have any particular conversation with Mr. McCathern in January, 1891, about obtaining advances for that year. I was in debt to him. I had paid my account for 1890, and some on the old note. He did not make any objection to advancing me supplies for 1891. He had no security, except the reserve title note to the mules, for the balance then due on that note, and also a mortgage

on land.    The land was in homestead.    He did not ask me for any security in  January, 1891 ; said nothing to me about security.    He did not at first decline to advance me supplies for that year.    He just said he would advance me as before."—Simeon Bell  testified :  I did not understand that plaintiff did not want to advance defendant for 1891.    He had paid up his account for 1890 in full, and paid some on the old debt.   I left plaintiff and opened business for myself in August, 1891.   Since then defendant has traded with me.   Plaintiff knew all along that the land of defendant was in homestead.   I knew nothing of any previous arrangement or understanding between them.   I could not have obtained the transfer of the rent notes to plaintiff without the understanding as to where the credit should be placed when collected.

The plaintiff introduced a judgment in his favor against the defendant, obtained in May, 1891, on two notes dated May 16, 1890, and due October 1, 1890, one for $433.35 and the other for $1,000, the latter bearing credits which reduced it to $176.72.    Also, a mortgage given to secure these notes, covering the defendant's land and crops.

The jury found for the defendant, and the plaintiff's motion for a new trial was overruled.    The motion contains the general grounds, and assigns error upon the allowance, over his objection, of the parol evidence as to the character and purpose of the transfer of the rent notes.    Another ground is, that the court refused a request to charge as follows :  " If you believe that the defendant obtained consent of McCathern to furnish supplies for 1891 upon a promise to transfer the rent notes, I charge you, that if without McCathern's knowledge or consent defendant went to the manager and delivered the rent notes with a different purpose, and yet went on and obtained supplies under McCathern's con-

sent given as aforesaid, the transaction with the manager was a fraud on McCathern, and the rent notes or collections on them should be appropriated according to the contract made with McCathern." The other two grounds are, that the court erred in the following instructions: "I charge you that if you find, at the time of the transfer of the rent notes by defendant to plaintiff, Mr. Simeon Bell was manager of the business of McCathern and attending to such matters for McCathern in the conduct of the business, and if you should further find that the rent notes were transferred with the understanding and agreement between defendant, J. W. Bell and Simeon Bell, that collections on or the proceeds of said rent notes should be first appropriated to the payment of the balance then due to McCathern by J. W. Bell on the mule note, then and in that event I charge you that the receiving of said rent notes under such agreement was equivalent to a settlement of the said balance due on the mule note, when said notes were collected, and could not be affected by a paper subsequently signed by J. W. Bell, authorizing McCathern to appropriate payments or credits at his election, unless the latter paper in some manner referred to the previous transfer of the rent notes, or from its contents was manifestly intended to change the previous contract. If McCathern has been injured by the fraudulent conduct of his business manager in that transaction, that is a question between him and Mr. Simeon Bell, with which the defendant has nothing to do."

JOHNSTON & BRINSON, for plaintiff.

LAWSON, CALLAWAY & SCALES, for defendant.